## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CHARLES W. REED, III,                           *
aka DWIGHT BYRD, #1366669
    Plaintiff                               *

    v                                       *        Civil Action No. CCB-06-2852

FRANK C. SIZER, et al.,                         *
    Defendants

                                     ******

## MEMORANDUM

On October 30, 2006, plaintiff Charles W. Reed filed the instant civil rights complaint

concerning his transfer from Maryland to Texas under an Interstate Corrections Compact . Paper

No. 1.  Defendants Frank C. Sizer and Lehrman Dotson filed a dispositive motion.[1] Paper No. 10.

Plaintiff has filed an opposition. Paper No. 21. No hearing is needed to resolve the question as to

whether plaintiff is entitled to relief. *See* Local Rule 105.6 (D. Md. 2004).  For the reasons that

follow, defendants' motion to dismiss and/or for summary judgment, construed as a summary

judgment motion, shall be granted.

### 1. Background

The uncontroverted record demonstrates that on April 12, 2005, an application for an

Interstate Corrections Compact ("ICE") transfer was prepared by Maryland Correctional Adjustment

Center ("MCAC") staff . Paper No. 10, Ex. 1.  MCAC staff sought plaintiff's involuntary transfer

due to his unsatisfactory adjustment history in Maryland's Division of Correction. The request for

the transfer was based on MCAC staff's belief that "plaintiff [was] a highly disruptive inmate

instigator who [had] possible gang affiliation." It was further noted that plaintiff "was manipulative

---

[1]Counsel has not filed a motion on behalf of Defendant Yuvonka Jenkins.  Defendant Jenkins
is entitled to dismissal, however, as no claim has been stated against her.

and intimidating towards staff." *Id*., p. 1-4.

On June 10, 2005, Assistant Warden Simon Wainwright prepared a memorandum attaching plaintiff's adjustment history over the past five years.  The memorandum noted that during plaintiff's incarceration  at MCAC  he had incurred 25 alleged rule infractions (although he had not been found guilty of all infractions) and was not scheduled to be released from disciplinary segregation until March of 2006.[2] *Id*., Ex. 2.

On May 15, 2006, Assistant Commissioner Allen advised Warden Dotson that plaintiff had been accepted for an involuntary transfer to Texas under the ICC.  Plaintiff was scheduled to be transferred by the Maryland State Police on May 22, 2006. Paper No. 10, Ex. 3.Plaintiff was advised on May 17, 2006. *Id*., Ex. 3, 4.

Plaintiff alleges the transfer was in retaliation for his having filed civil rights complaints against correctional employees and thus violated his right to due process by  impeding his access to the courts and  rendering him unable to effectively litigate his pending claims. Paper No. 1.

## 2. Standard of review

A genuine issue of material fact precluding summary judgment exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor.  *See Halperin v. Abacus Tech. Corp.*,128 F.3d 191, 196 (4th Cir. 1997) (citing *Anderson,* 477 U.S. at 255).  The non-moving party may not

---

[2]The adjustment history report states that plaintiff was not due to be released from disciplinary segregation until January 14, 2007, while the memorandum indicated he was due to be released from disciplinary segregation in March of  2006.Id., p. 1,3. Plaintiff correctly points out that the vast majority of the rule infractions listed were incurred prior to his incarceration at MCAC.  Paper No. 21.

rest upon mere allegations or denials in his pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir. 1991). The "mere existence of a scintilla of evidence in support of...plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252.

### 3. Analysis

#### A.      Due Process

In the prison context, two different types of constitutionally protected liberty interests may be created by state action. The first concerns a state-created entitlement to early release from incarceration. *See , e.g, Board of Pardons v. Allen*, 482 U. S. 369, 381 (1987) (state-created liberty interest in parole); *Wolff v. McDonnell*, 418 U. S. 539, 557 (1974) (state-created liberty interest in good conduct credits). The second arises due to the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U. S. 472, 484 (1995). The analysis to be applied in either instance requires a determination as to whether a constitutionally protected liberty interest is at stake and,  if so, what due process protections are required to protect the prisoner's interest. *See Wolff*, 418 U.S. at 556-57.

The second type of liberty interest is at issue here. In *Sandin*, 515 U.S. at 484, the Supreme Court refocused attention on the nature of the deprivation alleged, stating that a liberty interest may be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Thus, *Sandin* requires that the due process inquiry focus on the nature of the deprivation alleged and not on the language of particular prison regulations. *Id*. Except in certain circumstances not present here, *see Wilkinson v. Austin*, 545 U.S. 209 (2005), no

3

liberty interest is implicated in plaintiff's transfer, as prisoners do not have a liberty interest in being housed in any particular prison. *See Montayne v. Haynes*, 427 U S. 236, 243 (1976); *see generally Meachum v. Fano*, 427 U.S. 215, 224 (1976); s*ee also Olim v. Wakinekona*, 461 U.S. 238, 246 (1983) (holding "[j]ust as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State"); *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (interstate transfers do not constitute an atypical and significant hardship).

## B.     Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977).  The Supreme Court further explained that the "tools" *Bounds* requires to be provided are:

> those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), *quoting Lewis*, 518 U.S. at 355.  The requirement of actual injury "derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches".  *See Lewis*, 518 U.S. at 349.

Plaintiff states that his transfer to Texas has impeded his ability to litigate other civil rights

4

cases he has pending before this court.  Specifically, plaintiff claims he has not received numerous papers filed in *Reed v. Warden*, Civil Action No. CCB-05-3197, including defendants' dispositive motion, and as a result the case was dismissed.  While many documents sent to plaintiff by the court were returned as undeliverable, the Clerk remailed each document returned to it, granted plaintiff's motions for extension of time, and directed the Clerk to provide the plaintiff a copy of the dispositive motion.  *See* Paper No. 28, *Reed v. Warden*, Civil Action No. CCB-05-3197. The documents were returned to the court because plaintiff had been transferred within Texas, and did not promptly notify the Clerk of his new address.  The court's most recent Order in that case,  mailed to plaintiff on June 13, 2007, was not returned as undeliverable.  Summary judgment is being granted in that case today, on the merits, not because of the plaintiff's failure to respond.  Finally, to the extent plaintiff contends that he has been unable to litigate *Reed v. Dotson*, Civil Action No. CCB-05- 1216, due to the transfer, the court observes that counsel has been appointed to assist him in that case. *See* Paper No. 64, Civil Action No. CCB-05-1216.

In light of the foregoing, the court does not find that plaintiff's access to the court has been impaired by his transfer to Texas.

**C.      Retaliation**

In order to prevail on a claim of retaliation, plaintiff  "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).   It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment and generally, claims of  retaliation are to be treated with skepticism. *See Cochran*, 73 F.3d at 1317.  A complaint which alleges retaliation in wholly conclusory terms may properly be dismissed on the

pleading alone. *See Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir. 1987) (quoting *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 942 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Plaintiff's claim that his transfer to Texas was initiated in retaliation for his having filed civil rights claims fails. As previously noted, the Constitution does not entitle a prisoner to be held in any particular prison.  Moreover, plaintiff must show that "but for" the protected action, the retaliation would not have taken place. *See Huang v. Board of Governors,* 902 F.2d 1134, 1140 (4th Cir. 1990). Records show plaintiff had a lengthy history of failure to adjust to prison life within the Maryland Division of Corrections, resulting in his transfer to the Maryland Correctional Adjustment Center, Maryland's super-maximum security prison.   While incarcerated at MCAC plaintiff incurred additional disciplinary infractions.  The staff viewed plaintiff as disruptive, manipulative of other inmates, and a threat to staff, necessitating his transfer out of state. Paper No. 10, Ex. 2.  Plaintiff has produced no evidence that defendants' actions were in retaliation for his having filed suit against them. Rather, he has simply made a bald allegation that the conduct was retaliatory in nature.  Such an allegation is insufficient to prove retaliation.

### 4. Conclusion

For all the foregoing reasons, defendants' motion for summary judgment shall be granted. A separate order follows.

 

 

___August 21, 2007___                                   _____/s/_____
Date                                                                  Catherine C. Blake
                                                                          United States District Judge